**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| WILLIAM HALL and JASEN WINFREY ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 11 CV 08706 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| WALSH CONSTRUCTION COMPANY, ) | |
| INTERNATIONAL DECORATORS, ) | |
| INC., and CHICAGO REGIONAL COUNCIL ) | |
| OF CARPENTERS, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

William Hall and Jasen Winfrey filed a complaint against defendants Walsh Construction Company ("Walsh"), International Decorators, Inc. ("IDI"), and the Chicago Regional Council of Carpenters ("CRCC"), alleging racial harassment, discrimination, retaliation, and unlawful termination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* Before the court are Walsh's and IDI's motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] IDI also moves to strike certain allegations from the complaint pursuant to Federal Rule of Civil Procedure 12(f). For the reasons set forth below, Walsh's motion to dismiss [#24] will be denied, IDI's motion to dismiss [#29] will be granted, and IDI's motion to strike will be denied.

---

[1] This court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), and 42 U.S.C. § 2000e-5. Venue is proper under 42 U.S.C. § 2000e-5(f)(3) because the alleged unlawful employment practices occurred in this district.

1

# FACTS[2]

## I.     Hall's and Winfrey's Employment with IDI and Walsh

IDI hired Hall and Winfrey as carpenters in March 2006. Both Hall and Winfrey are African American. In July 2006, Walsh hired IDI as a subcontractor and Hall and Winfrey were assigned to work at various Walsh job sites. Walsh controlled the job operations, subcontractors, and workers' day-to-day duties at some of the sites where Hall and Winfrey worked. IDI controlled Hall's and Winfrey's terms of employment and job responsibilities and assigned them to work at specific job sites.

Hall and Winfrey were subjected to numerous forms of racial harassment and discrimination by IDI and Walsh employees, managers, and supervisors. They were called racially derogatory names, including "spook," "shadow-man," and "batman," and there was a picture of a hooded KKK clansman and a noose made out of carpentry tools at one of the job sites. When Hall and Winfrey complained to Walsh and IDI about the harassment and discrimination, they were simply transferred to another job site.

Both Hall and Winfrey stopped working for IDI in December 2006. Citing Winfrey's attendance violations, IDI terminated Winfrey by phone on November 6, 2006. Winfrey was immediately re-hired, however, when one of his attorneys contacted IDI. Winfrey was again terminated by phone on December 6, 2006. After Hall experienced continued racial harassment and discrimination at his job sites, he was forced to resign from IDI on December 10, 2006.

---

[2] Except where otherwise noted, the following facts are taken from the complaint and are presumed true for the purpose of resolving the pending motion. The court has included only those facts that are relevant to plaintiffs' claims against Walsh and IDI.

## II. Employment Discrimination Charges against IDI Filed with the Equal Employment Opportunity Commission ("EEOC")[3]

Winfrey filed a charge of discrimination against IDI on December 22, 2006, alleging discrimination based on race and retaliation for complaining about the discrimination. (IDI's Mot. to Dismiss Ex. 1.)[4] Hall filed a charge with the EEOC against IDI on May 1, 2006, also alleging discrimination based on race and retaliation. (IDI's Mot. to Dismiss Ex. 2.) The particulars of the two charges are nearly identical.

The charges assert that, in October 2006, Hall and Winfrey were "subjected to racial harassment in that [they were] intimidated, threatened and subject to racially derogatory remarks by [IDI] and other subcontractors." (IDI's Mot. to Dismiss Exs. 1 & 2.) The charges further allege that when Hall and Winfrey complained to IDI about the discrimination later that month, they were transferred to another location. Finally, each charge asserts, "As of today, [IDI] continues to harass me and retaliate against me for complaining of discrimination." (*Id.*)

The EEOC issued determinations in favor of Winfrey and Hall and against IDI on June 6, 2011.[5] (Compl. Exs. B, E.) The determinations explain that the EEOC's investigation of Hall's

---

[3] Hall and Winfrey filed charges of discrimination with the EEOC against all defendants. The charges against IDI, however, are the only charges at issue.

[4] Hall and Winfrey did not attach the EEOC charges to their complaint. In general, the court is restricted to considering facts alleged in the complaint and exhibits thereto in ruling on a Rule 12(b)(6) motion to dismiss. IDI, however, submitted the charges as exhibits to its motions to dismiss. Because the court must consider the allegations in Hall and Winfrey's EEOC charges to determine the proper scope of their complaint, the EEOC charges attached to IDI's motion to dismiss may be considered part of the pleadings. *See, e.g.*, *Wright* v. *Assoc. Ins. Co.*, 29 F.3d 1244, 1248 (7th Cir. 1994); *Davis* v. *Cent. Can Co.*, No. 05 C 1563, 2006 WL 2255895, at *4 (N.D. Ill. Aug. 4, 2006); *Whitehead* v. *AM Int'l, Inc.*, 860 F. Supp. 1280, 1286 n.5 (N.D. Ill. 1994); *see also* Fed. R. Civ. P. 10(c). Courts in this circuit have also considered EEOC charges to be matters within the public record that are subject to judicial notice. *See, e.g.*, *Pierce* v. *Ill. Dep't of Human Servs.*, 128 F. App'x 534, 536 (7th Cir. 2005); *Moses* v. *U.S. Steel Corp.*, No. 11 C 385, 2012 WL 1066769, at *1 (N.D. Ind. Mar. 28, 2012); *Ocholi* v. *Skywest Airlines*, No. 11 C 310, 2012 WL 256125, at *1 (E.D. Wis. Jan. 27, 2012); *see also Davis*, 2006 WL 2255895, at *4. Therefore the court may properly consider the EEOC charges attached to IDI's motion to dismiss. *Cf.* Fed. R. Civ. P. 12(d) (requiring court to convert a motion to dismiss to a motion for summary judgment if the motion presents matters outside the pleadings that are not excluded by the court).

[5] The EEOC also issued determinations in favor of Winfrey and Hall against Walsh and CRCC.

and Winfrey's charges against IDI established reasonable cause to believe that Hall and Winfrey were subjected to harassment and intimidation based on their race and that IDI retaliated against them for complaining of the harassment by transferring them to another location, in violation of Title VII. (*Id.*) The EEOC issued notices of right to sue on September 8, 2011.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6); *GE Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis, but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). Rather, it is the facts that count.

## ANALYSIS

Hall and Winfrey allege that the conduct of Walsh's and IDI's employees constituted racial harassment, discrimination, and retaliatory transfer in violation of Title VII. Walsh moves to dismiss the claims against it on the ground that the complaint does not allege facts sufficient to give rise to the inference that Walsh was either plaintiff's employer. Winfrey also alleges that

IDI's termination constitutes race discrimination and retaliation for having complained about unlawful employment practices. Hall similarly alleges that he was forced to resign in retaliation for having made complaints and that his forced resignation constitutes race discrimination.[6] IDI moves to dismiss plaintiffs' claims of unlawful termination on the ground that they are beyond the scope of the charges Hall and Winfrey filed with the EEOC.

Hall and Winfrey, who are represented by counsel, filed no response to defendants' motions to dismiss. "If [a court is] given plausible reasons for dismissing a complaint, [the court is] not going to do the plaintiff's research and try to discover whether there might be something to say against the defendant's reasoning." *Kirksey* v. *R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999). Hall and Winfrey's failure to respond may therefore constitute waiver or forfeiture of their right to contest dismissal. *See Alioto* v. *Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011); *Lekas* v. *Briley*, 405 F.3d 602, 614 (7th Cir. 2005). If the reasons given for dismissing the complaint are not sound, however, the court need not grant the motion as a matter of course. *See, e.g.*, *Dodd* v. *Pentair Pump Grp.*, No. 11 C 4478, 2012 WL 1985701, at *1 (N.D. Ill. Jun. 1, 2012).

## I. Whether Hall and Winfrey Have Sufficiently Alleged that Walsh Was Their Employer

In order to maintain a Title VII action, a plaintiff must plead and prove the existence of an employment relationship with the defendant. *See Small* v. *Chao*, 398 F.3d 894, 897 (7th Cir. 2005); *Alexander* v. *Rush N. Shore Med. Ctr.*, 101 F.3d 487, 492 (7th Cir. 1996); *Ost* v. *W. Suburban Travelers Limousine, Inc.*, 88 F.3d 435, 440 (7th Cir. 1996); *Knight* v. *United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 380 (7th Cir. 1991); *see also* 42 U.S.C. § 2000e-2(a).

---

[6] Since Hall resigned, his unlawful termination claim is based on the theory of constructive discharge, which occurs when an employer "makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Saxton* v. *Am. Tel & Tel. Co.*, 10 F.3d 526, 536–37 (7th Cir. 1993) (quoting *Weihaupt* v. *Am. Med. Ass'n*, 874 F.2d 419, 426 (7th Cir. 1989)).

Walsh contends that it was merely a general contractor and that plaintiffs' allegations show that IDI, not Walsh, was plaintiffs' employer.

The Seventh Circuit has made clear, however, that an employee may have multiple employers for liability purposes under Title VII. *See Tamayo* v. *Blagojevich*, 526 F.3d 1074, 1088 (7th Cir. 2008) ("[A]ny of the Affiliates that possibly maintained an employment relationship with [the plaintiff] may be named as a defendant under Title VII." (quoting *Worth v. Tyer*, 276 F.3d 249, 259 (7th Cir. 2001))). A company can be considered a "de facto or indirect employer" if it "directed the discriminatory act, practice, or policy of which the employee is complaining." *Id.* (quoting *Papa* v. *Katy Indus., Inc.*, 166 F.3d 937, 941 (7th Cir. 1999)). A company can also be considered an indirect employer when it "control[s] the plaintiff's employment relationship." *Id.* (quoting *EEOC* v. *Illinois*, 69 F.3d 167, 169 (7th Cir. 1995)). "De facto or indirect employer liability depends on the amount of the control a putative Title VII defendant exerts over the plaintiff's employment." *Kerr* v. *WGN Cont'l Broad. Co.*, 229 F. Supp. 2d 880, 886 (N.D. Ill. 2002) (citing *EEOC*, 69 F.3d at 171–72). In *Tamayo*, for example, the plaintiff alleged that she was directly employed by the Illinois Gaming Board, which hired, promoted, demoted and constructively discharged her. *Id.* at 1087. The Gaming Board's budget, however, was controlled by the Illinois Department of Revenue, which had to approve the plaintiff's salary and also made certain personnel decisions such as hiring outside counsel and laying off five employees. *Id.* at 1087. The Seventh Circuit concluded that these allegations suggested that the Department of Revenue was also plaintiff's employer for the purposes of Title VII, even though the plaintiff conceded that the Gaming Board was an independent agency. *Id.* at 1087–88.

Hall and Winfrey allege that Walsh controlled the job operations, subcontractors, and day-to-day duties at some of the job sites where they worked. In addition, Hall and Winfrey allege that Walsh employees, managers, and supervisors – along with IDI employees, managers, and supervisors – made racially derogatory comments, hung a picture of a hooded KKK clansmen, and put up a noose made out of carpentry tools at Wash job sites. Hall and Winfrey also allege that they complained to Walsh about the harassment and that Walsh transferred them to a different job site, rather than investigate the alleged harassment. Drawing all inferences in plaintiffs' favor, these allegations support the conclusion that Walsh exerted a certain degree of control over Hall's and Winfrey's employment and that Walsh was at least partially responsible for unlawful employment practices at issue. *See Tamayo*, 526 F.3d at 1089 (plaintiff's allegation that Illinois Department of Revenue made decisions regarding her salary, which was the basis of her alleged adverse employment action, as well as other personnel decisions was "more than sufficient to avoid dismissal" on the ground that the Department of Revenue was not the plaintiff's employer); *cf. EEOC*, 69 F.3d at ⁻171 (plaintiffs' "real" employer was the entity that actually directed the discriminatory hiring and firing practices, not the defendant entity); *Atkins* v. *Northrop Grumman Tech. Servs.*, No. 07 C 1669, 2008 WL 5062785, at *2–3 (S.D. Ind., Nov. 24, 2008) (granting general contractor's motion to dismiss because plaintiff merely alleged that general contractor was his "employer" but did not allege facts to support the conclusion that it

exerted control over his employment).[7] Therefore plaintiffs have sufficiently alleged that Walsh was their employer for the purposes of Title VII. Walsh's motion to dismiss will be denied.

## II. Whether Hall's and Winfrey's Termination Claims against IDI are Beyond the Scope of Their EEOC Charges

Before bringing a Title VII claim in court, a plaintiff must file a charge of discrimination with the EEOC and receive a right to sue notice from the EEOC. *See, e.g.*, *Alexander* v. *Gardner-Denver Co.*, 415 U.S. 36, 46, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974); *Conner* v. *Ill. Dep't of Natural Res.*, 413 F.3d 675, 680 (7th Cir. 2005); *Cheek* v. *W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). Generally, a Title VII plaintiff is barred from bringing claims that were not included in an EEOC charge. *Jones* v. *Res-Care, Inc.*, 613 F.3d 655, 670 (7th Cir. 2010); *Sitar* v. *Ind. Dep't of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003). A plaintiff may only proceed on a claim not explicitly set forth in a charge of discrimination "'if the claim is like or reasonably related to the EEOC charges,' and the claim in the complaint 'reasonably [could] be expected to grow out of an EEOC investigation of the charge[s].'" *Peters* v. *Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002) (quoting *Harper* v. *Godfrey Co.*, 45 F.3d 143, 148 (7th Cir. 1995)); *Jenkins* v. *Blue Cross Mut. Hosp. Ins.*, 538 F.2d 164, 167 (7th Cir. 1976). Claims are deemed reasonably related if there is a factual relationship between them. *Cheek*, 31 F.3d at 501. "This means that the EEOC charge and the complaint must, at a minimum, describe

---

[7] Walsh, in its motion to dismiss, relies almost exclusively on cases that considered whether a plaintiff had submitted evidence of an employer-employee relationship that would be sufficient to survive the defendant employer's summary judgment motion. *See Alexander*, 101 F.3d at 493–94; *Ost*, 88 F.3d at 438; *Knight*, 950 F.2d at 378–79; *Fly* v. *Walsh Constr. Co.*, No. 10 C 126, 2011 WL 6152193 (N.D. Ind. Dec. 12, 2011); *Hernandez* v. *Valet Parking Serv., Inc.*, No. 04 C 7559, 2005 WL 2861054 (N.D. Ill. Oct. 27, 2005); *Kerr* v. *WGN Broad. Co.*, 229 F. Supp. 2d 880 (N.D. Ill. 2002). While the court may look to these decisions in distilling the applicable legal principles, their significance is limited because the plaintiffs in those cases were held to Rule 56's more stringent evidentiary requirements. The one case cited by Walsh that considers a motion to dismiss supports the conclusion that a general contractor may be liable under Title VII if it exerts control over key employment decisions. *See Atkins*, 2008 WL 5062785, at *2 (noting that entity that "pulls the strings" in the background and "essentially" controls employment decisions will be considered a de facto employer (citation omitted)).

the *same conduct* and implicate the *same individuals*." *Id.* at 501; *see also Moore* v. *Vital Prods.*, 641 F.3d 253, 257 (7th Cir. 2011). The purpose of this rule is to "afford[ ] the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion and [give] the employer some warning of the conduct about which the employee is aggrieved." *Cheek*, 31 F.3d at 501 (internal citation omitted).

IDI argues that plaintiffs' claims of unlawful termination are not like or reasonably related to the allegations in their EEOC charges. In their EEOC charges, Hall and Winfrey checked the boxes for discrimination based on race and retaliation, and they set forth two specific allegations of unlawful conduct by IDI: (1) that in October 2006 they were "subjected to racial harassment in that [they were] intimidated, threatened and subject to racially derogatory remarks by [IDI] and other subcontractors," and (2) that "in or around October 2006," they were transferred to another location after they complained to IDI about the discrimination. The charges further assert, "As of today, [IDI] continues to harass me and retaliate against me for complaining of discrimination."

The court agrees that Hall's and Winfrey's unlawful termination claims do not involve the same conduct that was implicated in their EEOC charges. The EEOC charges do not mention Hall's forced resignation or Winfrey's termination[8] and do not refer to any individuals at IDI who might have been involved in these allegedly unlawful employment actions. Moreover, in general, claims of racial harassment are not like or reasonably related to claims of

---

[8] Hall resigned on December 10, 2006, twelve days before he filed his EEOC charge. Winfrey was terminated for the second time on December 6, 2006, nearly five months before he filed his EEOC charge. While a plaintiff does not have to file an additional EEOC charge to claim that his employer retaliated against him for filing the charge, courts only consider such claims if the alleged retaliation occurred after the charge had been filed. *See McKenzie* v. *Ill. Dep't of Transp.*, 92 F.3d 473, 482–83 (7th Cir. 1996). Here, the alleged retaliatory conduct occurred before Hall and Winfrey filed their charges against with the EEOC.

9

unlawful termination. *See, e.g.*, *Moore*, 641 F.3d at 257 (discriminatory discharge claim not like or reasonably related to hostile work environment claim); *Rush* v. *McDonald's Corp.*, 966 F.2d 1104, 1110–11 (7th Cir. 1992) (racial harassment claim not like or reasonably related to discriminatory termination claim); *Gbur* v. *City of Harvey*, 835 F. Supp. 2d 600, 625 (N.D. Ill. 2011) (hostile work environment claim not like or reasonably related to discriminatory discharge, or promotion claims). Simply checking the box for "race" discrimination on the charge and making general allegations of harassment and retaliation would not have put IDI on notice of plaintiff's termination claims. *See Moore*, 641 F.3d at 257; *Sitar*, 344 F.3d at 726. Nor would the allegation that IDI "continue[d]" to harass and retaliate against Hall and Winfrey put IDI on notice of plaintiffs' termination claims because, as noted above, plaintiffs had already been terminated at the time they filed their EEOC charges. For all of these reasons, plaintiffs' termination claims are beyond the scope of their EEOC charges. IDI's motion to dismiss plaintiffs' termination claims will be granted.

### III. IDI's Motion to Strike

IDI also moves to strike all allegations from the complaint that relate to Hall's and Winfrey's termination claims. IDI argues that, in the event that the court grants its motion to dismiss, the allegations of discriminatory and retaliatory termination will be irrelevant to the remaining issues of dispute and prejudicial to its defense.

Rule 12(f) empowers a court to strike from any pleading any insufficient defense or any "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally are disfavored, and such motions are only appropriate if "the language in the pleading has no relation to the controversy and is unduly prejudicial." *Circuit Sys., Inc.* v. *Mescalero Sales, Inc.*, 925 F. Supp. 546, 548 (N.D. Ill. 1996) (citation omitted). Although Hall's

and Winfrey's claims of unlawful termination are not actionable, there is a factual basis for these allegations that may still have some bearing on this controversy. For example, the fact that IDI re-hired Winfrey after receiving a call from his attorney might support the conclusion that IDI acted with discriminatory animus. Hall's decision to resign was allegedly the result of IDI's harassment, and might provide circumstantial evidence in support of Hall's discrimination claims. Therefore the court cannot conclude that the allegations will have no bearing on this case. The court will deny IDI's motion to strike.

## CONCLUSION AND ORDER

Walsh's motion to dismiss [#24] is denied. IDI's motion to dismiss is granted [#29] and its motion to strike is denied. To the extent Hall and Winfrey assert claims for unlawful termination, the claims are dismissed with prejudice. Hall and Winfrey will only be permitted to proceed with claims arising from defendants' alleged harassment and retaliatory transfers. Walsh is directed to answer the complaint by August 23, 2012. This case is set for a status hearing on August 30, 2012 at 8:30 a.m.

Dated: Aug. 9, 2012           Enter: _____

                                                              JOAN HUMPHREY LEFKOW
                                                              United States District Judge